UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN INTERNATIONAL INDUSTRIES, a California General Partnership,<br><br>Plaintiff,<br><br>v.<br><br>SHARIDAN STILES, an individual,<br><br>Defendant. | No. 2:19-cv-1218 DAD AC PS<br><br>FINDINGS AND RECOMMENDATIONS |

Defendant is proceeding in this action pro se and the case was accordingly referred to the undersigned by Local Rule 302(c)(21). Plaintiff American International Industries ("AI") moves for summary judgment in its favor on the following claims raised in its First Amended Complaint (ECF No. 10) and in defendant Sharidan Stiles' ("Stiles") Answer and Counterclaims thereto (ECF No. 30): (1) AI's First Cause of Action for Declaratory Judgment of Non-Infringement regarding Stiles' Patent No. 9,707,689 (the "689 Patent"); and (2) Stiles' Count I for Willful Infringement of the 689 Patent. ECF No. 81. Defendant failed to oppose the motion. See ECF No. 84. Having carefully considered plaintiff's motion on the merits[1], for the

---

[1] A district court may not grant a motion for summary judgment solely because it is unopposed. Cristobal v. Siegel, 26 F.3d 1488, 1494–95 & n. 4 (9th Cir.1994) (unopposed motion may be granted only after court determines that there are no material factual issues of fact). However, if movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact, the motion may be granted on the merits. Id.

1

reasons explained below, the undersigned recommends that the motion be GRANTED.

## I.  Procedural Background

Plaintiff filed this action for declaratory relief on July 1, 2019.  ECF No. 1.  By the complaint, plaintiff seeks a declaratory judgment of non-infringement of Stiles' 689 Patent.  Id. at 3.  According to the complaint, this lawsuit arises out of a lengthy litigation history between plaintiff and Stiles, in which Stiles has repeatedly filed lawsuits claiming that plaintiff has infringed on her patents via its products, including a product known as the "Ardell Precision Shaper."  Id. at 2.

On September 25, 2014, Stiles filed complaint in the Eastern District of California against plaintiff and its retailer, Wal-Mart Stores, Inc. ("Walmart").  See Stiles v. Walmart Stores, Inc., et al., E.D. Cal. Case No. 14-cv-2234-DAD-DMC ("Stiles I").  The Stiles I case asserted claims for trade secret and patent infringement arising from the sale of both the Ardell Precision Shaper and plaintiff's "Salon Perfect Micro Razor" product, and was later amended to include additional claims for trade dress infringement and antitrust violations.  Stiles I, ECF No. 1, 142 (Fourth Amended Complaint).  On November 8, 2022, the court granted defendants' motions for partial summary judgment in Stiles I and ordered that, *inter alia*, judgment be granted in favor of defendants on plaintiff's patent infringement claims.  Stiles I, ECF No. 588 at 37.  On March 30, 2023, judgment was entered in favor of AI and Walmart and against Stiles on all of Stiles' claims, consistent with the court's November 8, 2022 order.  Stiles I, ECF Nos. 608, 610.  The case was closed on November 2, 2023.  Stiles I, ECF No. 637.

In the case at bar, AI "seeks summary judgment of non-infringement on a second-filed continuation patent for the same reasons that summary judgment was sought—and granted—on similar infringement claims arising from the parent patent."  ECF No. 81 at 6.  As stated above, in its complaint for declaratory judgment, plaintiff seeks a declaration that its Precision Shaper product does not infringe Stiles' United States Patent No. 9,707,689 (the "689 Patent" or "Patent-in-Suit").  ECF No. 10 (Operative First Amended Complaint).  In her Answer (ECF No. 30), Stiles included a Counterclaim for infringement of the 689 Patent by AI's Precision Shaper product.

II.     **Applicable Legal Standard**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "Summary judgment is as appropriate in a patent case as in any other." Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984). Further, the Federal Circuit has made clear that a finding of noninfringement on summary judgment is available in patent cases. Becton Dickinson and Co. v. C.R. Bard, Inc., 922 F.2d 792, 795 (Fed. Cir. 1990) (affirming summary judgment of noninfringement); Nike Inc. v. Wolverine World Wide, 43 F.3d 644, 646 (Fed. Cir. 1994) ("summary judgment is appropriate in a patent case").

"A critical factor in a motion for summary judgment in a patent case, as in any other, is the determination by the court that there is no genuine issue of material fact. With respect to whether there is a genuine issue, the court may not simply accept a party's statement that a fact is challenged." Barmag Barmer Maschinenfabrik AG, 731 F.2d at 835-36. The party opposing entry of summary judgment must point to a specific evidentiary conflict; "mere denials or conclusory statements are insufficient." Id. "In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810

F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

### III.     Judicial Notice

Plaintiff submits multiple documents for judicial notice, which are attached as exhibits to its motion for summary judgment.  ECF No. 81-3.  Exhibits 1, 2, 9, 10, 11, 12, and 13 are records from the United States Patent and Trademark Office.  Such records are subject to judicial notice under Rule 201(b) of the Federal Rules of Evidence, which provide that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "Judicial notice is appropriate for records and 'reports of administrative bodies,'" such as the United States Patent and Trademark Office.  United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008).  The court takes judicial notice of Exhibits 1, 2, 9, 10, 11, 12, and 13.

Exhibit 2 is an order entered by this court in Stiles I, ECF No. 588, issued November 8, 2022.  The court finds Exhibit 2 appropriate for judicial notice.  See, e.g., Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of prior orders and filings in related litigation).

Exhibit 23 is a foreign patent referenced by the United States Patent and Trademark Office in the course of examination of Stiles' patent.  Judicial notice is appropriate for foreign government records such as Exhibit 23.  See GeoVector Corp. v. Samsung Elecs. Co., 234 F. Supp. 3d 1009, 1016 n. 2 (N.D. Cal. 2017) ("The Korean Patent is also the proper subject of judicial notice as it is part of a publicly available government record.").  The court takes judicial notice of Exhibit 23.

////

**IV.    Statement of Undisputed Facts**

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.  Plaintiff's statement of undisputed facts is located at ECF No. 81-1.

Claim 1 of Stiles' Patent No. 9,707,689 (the "689 Patent") includes the limitation that the "straight cutting edge portion" of the razor "extend[s] beyond all other parts of said head portion along said straight cutting edge portion by about 0.02 inch such that no part of said head portion extends beyond said straight cutting edge portion of the blade along said straight cutting edge portion." ECF No. 81-2 at 20, ¶¶ 10:26-37.  Claims 2 through 8 of the 689 Patent are dependent on Claim 1. Id. at ¶¶ 10:59 - 15, 11:15.  Claim 9 of the 689 Patent includes the limitation that the "straight cutting edge portion" of the razor "extend[s] beyond all other parts of said head portion along said straight cutting edge portion by about 0.02 inch such that no part of said head portion extends beyond said straight cutting edge portion of the blade along said straight cutting edge portion." ECF No. 81-2 at 21, ¶¶ 11:24-29.  Claims 10 through 18 of the 689 Patent are dependent on Claim 9. Id. at ¶¶ 11:33-12:38.

The 689 Patent is a continuation of application U.S. Ser. No. 11/775,688, filed July 10, 2007, which issued as U.S. Patent No. 9,108,329 (the "329 Patent" or the "Parent Patent"). ECF No. 81-2 at 7.  The 329 Patent includes limitations identical to those in Claims 1 and 9 of the 689 Patent, namely: a "straight cutting edge portion" of the razor "extend[s] beyond all other parts of said head portion along said straight cutting edge portion by about 0.02 inch such that no part of said head portion extends beyond said straight cutting edge portion of the blade along said straight cutting edge portion." ECF No. 81-2 at 36, ¶¶ 10:18-23 and 14, ¶¶ 12:3-7.

The Precision Shaper includes a safety guard that is assembled into the head.  ECF No. 81-2 at 180, ¶ 5.  The safety guard is part of the head portion of the Precision Shaper. Id.  The safety guard of the Precision Shaper extends beyond the straight cutting edge portion of the blade along the straight cutting edge.  ECF No. 81-2 at 180-181.  This court found in Stiles I that no reasonable jury could conclude that there was literal infringement of the 329 Patent by the Precision Shaper razor because the razor's "straight cutting edge portion" must extend "beyond

5

all other parts of said head portion along said straight cutting edge portion by about 0.02 inch." Stiles I, ECF No. 588 at 31. The court reasoned that the Precision Shaper could not literally infringe the parent patent because "the cutting head of [AI's] razor includes a safety guard that extends beyond the blade edge," while the independent claims of the 329 Patent "include a limitation that the razor's straight cutting edge portion' must extend 'beyond all other parts of said head portion along said straight cutting edge portion by about 0.02 inch.'" Id. at 31-32.

Safety guards were well known in the art of razor design prior to 2000. ECF No. 81-2 at 180, ¶ 5. Stiles represented to the Patent Office that the small .02 inch extension of her blade's straight cutting edge beyond the other portions of the razor head eliminates the need for guards or other protective elements. ECF No. 81-2 at 19, ¶¶ 8:29-39. The straight cutting edge portion of the Precision Shaper extends beyond most of the head portion by 0.063 to .079 inch. ECF No. 81-2 at 189, 192, 193. The "Tritschler" (German Patent No. DE 3136033), invented by E. Tritschler, was filed in 1981. Id. at 167, 180. Tritschler teaches and claims a razor with a blade projecting unobstructed around 1 mm (0.04 inch) over the blade head and notes that this feature provides an advantage sufficient to be included in the claims. ECF No. 81-2 at 180, ¶ 1; ECF No. 81-2 at 142, 172-173. Tritschler teaches and claims a razor width of around 15 mm (0.59 inch) with a blade projecting unobstructed around 1 mm (0.04inches) over the blade head and notes that these two features, combined, provide an advantage sufficient to be included in the claims. ECF No. 81-2 at 170-173, 180, ¶ 1.

As stated above, the 689 Patent is a continuation of the Parent Patent, the 329 Patent. ECF No. 81-2 at 7. Application No. 11/775,688 for the 329 Patent was rejected by the examiner as being obvious in view of certain prior art references, focused in part on the specific limitation that only a small portion of the blade (i.e., about 0.02 inch) extend beyond all other parts of the razor head. ECF No. 81-2 at 83, ¶ 6. In her responses to the examiner's rejection of the Parent Patent, Stiles repeatedly argued against the rejection and claimed that the combination of a blade with a small width with only a small portion exposed beyond the head would "provide a razor blade that is unobstructed to allow precise placement of the blade for detailed shaving, while not being large enough to readily cause cuts or nicks in the shaved skin, obviating the need for a

guard." ECF No. 81-2 at 100; 118. In its Decision on Appeal reversing the rejection of the 329 Patent, the Patent Trial and Appeal Board ("PTAB") noted "a person of ordinary skill in the art would not have been prompted to reduce that overhang to 0.02 inches." Id. at 134. After the PTAB Decision, the Examiner issued a Notice of Allowance which contains the following Reasons for Allowance:

> The prior [art] of record fails to disclose or make obvious the claimed combination of a personal shaving razor comprising, *inter alia*, a straight cutting edge portion that is disposed substantially perpendicular to a longitudinal axis of the handle and extending beyond all other parts of the head portion along the straight cutting edge portion by about 0.02 inches wherein no part of the head port extends beyond the straight cutting edge portion of the blade. On page 12 of the specification of the instant application, it is stated '[b]y extending the blade only slightly beyond the head portion, Applicant has found that guards or other protective elements are unnecessary, and at the same time the unobstructed blade can shave the unwanted hair close to the skin without leaving any stubble by cutting the hair close the root' and '[p]referably, there are corner guards extend so that their bottom edges are even with the cutting edge of the blade (e.g. about 0.02 inch). This reduces the risk of corners of the cutting edge of the blade cutting the skin, while permitting the cutting edge of the blade to shave unwanted hair close to the root.' The closest prior art to DE 3136033 discloses a similar type razor; however, the straight cutting edge portion extends beyond the head portion around 1mm. See page 4 of the translation wherein it is stated '[a]dvantageously the blade here projects around 1 mm over the blade head', which is about twice as long as 0.02 inch claim limitation.

ECF No. 81-2 at 142.

### V.   Analysis

A. Availability of Declaratory Judgment

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A party seeking to base subject matter jurisdiction on the Declaratory Judgment Act bears the burden of showing an "actual controversy." Crossbow Tech., Inc. v. YH Tech., 531 F.Supp.2d 1117, 1120 (N.D.Cal.2007). Jurisdiction is proper only where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (internal citations omitted).  A federal court has jurisdiction to enter a declaratory judgment in a patent case "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007).

Here, as discussed above, defendant Stiles already sued plaintiff to enforce the Parent Patent.  Following the resolution of Stiles I, Stiles initiated four lawsuits, currently pending as pro se cases in this district, related to sales of plaintiff's allegedly infringing products.  Stiles v. Target Corp., 2:19-cv-02144-DAD-AC, Stiles v. CVS Pharmacy Inc., 2:19-cv-02145-DAD-AC; Stiles v. Wal-Mart Stores, 2:19-cv-02146-DAD-AC; Stiles v. Proctor and Gamble, 2:23-cv-00474-DAD-AC.  In light of the litigation landscape, the undersigned finds this court has jurisdiction to move forward with this declaratory judgment action.

B. Determination of Noninfringement

1. Governing Legal Principles

A patent may be infringed literally or under the doctrine of equivalents.  Townsend Eng'g Co. v. Hitec Co., 829 F.2d 1086, 1089 (Fed. Cir. 1987).  A finding of literal infringement requires that "each and every limitation set forth in a claim appear in an accused product." V-Formation, Inc. v. Benetton Grp., SpA, 401 F.3d 1307, 1312 (Fed. Cir. 2005).  Thus, a party claiming infringement (Stiles), and who hopes to avoid a summary judgment finding noninfringement, must show that there is a genuine dispute as to whether each claim limitation is present in the accused device (the Precision Shaper product).  Id.  Infringement under the doctrine of equivalents may be found under either the "insubstantial differences" test or the "function-way-result" test.  Voda v. Cordis Corp., 536 F.3d 1311, 1326 (Fed. Cir. 2008). Under the insubstantial differences test, "an element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." Honeywell Int'l Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1139 (Fed. Cir. 2004).  Under the function-way-result test, typically appropriate for mechanical inventions, equivalence is met if an element in the accused product

1  "performs substantially the same function, in substantially the same way, to achieve substantially
2  the same result." Abbot Labs. v. Sandoz, Inc., 566 F.3d 1282, 1296-97 (Fed. Cir. 2009).
3        The doctrine of equivalents is an equitable doctrine. It would not be equitable to allow a
4  patentee to claim a scope of equivalents encompassing material that had been disclosed by
5  someone else, or that would have been obvious in light of another's earlier disclosure.
6  Accordingly, it is well settled that limitations in a claim cannot be given a range of equivalents so
7  wide as to cause the claim to encompass anything in the prior art. Tandon Corp. v. United States
8  ITC, 831 F.2d 1017, 1026 (Fed. Cir. 1987). Whether an asserted range of equivalents would
9  cover what is already in the public domain is an issue of law. Wilson Sporting Goods Co. v.
10 David Geoffrey & Assocs., 904 F.2d 677, 683 (Fed. Cir. 1990), disapproved of on other grounds
11 by Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83 (1993). The party asserting
12 infringement (Stiles) bears the burden of establishing that her asserted range of equivalents would
13 not ensnare prior art because the patentee bears the burden of proving infringement. Id. at 685.
14     2.   There is No Literal Infringement
15       The '689 Patent has two independent claims: Claim 1 and Claim 9. These independent
16 claims include critical limitations that, according to those claims' plain and ordinary meaning, are
17 not present in AI's Precision Shaper product, and accordingly, the claims of the 689 Patent cannot
18 be literally infringed. Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir.
19 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from
20 which they depend have been found to have been infringed."). As stated above, Claims 1 and 9
21 each include the limitation that the "straight cutting edge" of the razor must "extend[] beyond all
22 other parts of said head portion along said straight cutting edge portion by about 0.02 inch such
23 that no part of said head portion extends beyond said straight cutting edge portion of the blade
24 along said straight cutting edge portion." ECF No. 81-2 at 20-21. The Precision Shaper's head
25 portion includes a safety guard that wraps over and past the straight cutting edge of the blade,
26 indisputably extending beyond the straight cutting edge portion of the blade. Id. at 180. Because
27 this limitation is not satisfied, the Precision Shaper cannot literally infringe the 689 Patent.
28       Even if the safety guard did not extend past the straight cutting edge of the razor blade of

the Precision Shaper, the straight cutting edge also extends beyond most of the plastic parts of the head portion along the cutting edge by 0.063 to 0.079 inch—more than three times the 0.02 inch limitation in Claims 1 and 9. Id. at 189, 192, 193. Accordingly, no reasonable jury could conclude that the Precision Shaper literally infringes the 689 Patent.

### 3. There is No Infringement Under the Doctrine of Equivalents

Whether evaluated under the insubstantial differences test or the function-way-result test, the doctrine of equivalents "cannot allow a patent claim to encompass subject matter that could not have been patented; nor can it be used to ignore the actual language of the patent." K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1367 (Fed. Cir. 1999). Thus, "the doctrine of equivalents cannot allow a patent to encompass subject matter existing in the prior art . . . [n]or may it allow coverage of obvious, or 'trivial,' variations of the prior art." Id. Additionally, the doctrine cannot be used to broaden the scope of a claim when the claim term literally encompasses equivalents by virtue of broadening language such as "about" or "approximately." Cohesive Techs. Inc. v. Waters Corp., 543 F.3d 1351, 1372 (Fed. Cir. 2008) ("by electing to include the broadening word 'about' in this claim, the patentee has in this case already captured what would otherwise be equivalent within the literal scope of the claim").

First, as discussed above, the safety guard in the head portion of the Precision Shaper extends beyond the straight cutting edge of the razor blade. ECF No. 81-2 at 180. This feature contradicts the limitation in the 689 Patent requiring "that no part of said head portion extends beyond said straight cutting edge portion of the blade along said straight cutting edge portion," and so it cannot infringe under the doctrine of equivalents as a matter of law. Stiles represented to the Patent Office that the small extension of the straight cutting edge past the other parts of the head portion is to enable users to safely remove unwanted hair without safety guards obstructing the cutting edge. ECF No. 81-1 at 7, 19; ECF No. 81-2 at 83, 100, 118, 134, 142. The Precision Shaper takes the opposite approach, by including a cutting edge that extends much farther beyond the other portions of the head while maintaining a safety benefit by including a metal safety guard that wraps over and extends beyond the straight cutting edge of the blade. ECF No.81-2 at 180, 189, 192-93. This type of safety guard was well known in the art as a way to significantly reduce

the chance of injury during shaving by extending a guard past the cutting edge of the blade to reduce pressure that the cutting edge applies to the skin long before the existence of the '689 Patent. Id. at 180. The Precision Shaper and the razor claimed in the 689 Patent perform the "safety" function in different ways: the claimed razor provides this function by having a small 0.02 inch blade extension from the head, while the Precision Shaper performs this function by having a safety guard wrapped over the blade cutting edge.

Second, even disregarding the extension of the safety guard beyond the cutting edge, the Precision Shaper cannot infringe the independent claims of the 689 Patent under the doctrine of equivalents. Independent claims 1 and 9 include the limitation that the razor blade straight cutting edge extends beyond all other parts of the head portion along the straight cutting edge by "about 0.02 inch." ECF No. 81-2 at 21, 180. The prosecution history defines an upper limit of this "about" range, as the Reasons for Allowance in the Parent Patent cite the Tritschler reference, which includes the limitation that the straight cutting edge of the razor blade extends past all other portions of the head by approximately 0.04 inch. Id. at 142, 172-73, 180. Accordingly, the scope of the "*about* 0.02 inch" limitation cannot meet or exceed approximately 0.04 inch. As noted above, the 0.063 to 0.079 extension of the blade of the Precision Shaper is more than three times Stiles' claimed 0.02 inch extension and well beyond the possible scope of the claim limitation of 0.04 inch. Id. at 189, 192-93. For these reasons, there is no there is no infringement under the doctrine of equivalents.

## VI.    Conclusion

For all the reasons explained above, IT IS HEREBY RECOMMENDED that plaintiff's motion for summary judgment (ECF No. 81) be GRANTED, that judgment be entered accordingly in plaintiff's favor as to (1) AI's First Cause of Action for Declaratory Judgment of Non-Infringement regarding Stiles' Patent No. 9,707,689 (the "689 Patent"), and (2) defendant Sheridan Stiles' Count I for Willful Infringement of the 689 Patent.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: February 14, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE